# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTELLECTUAL PROPERTY WATCH and WILLIAM NEW, <br><br>              Plaintiffs, <br><br>    v. <br><br> UNITED STATES TRADE REPRESENTATIVE, <br><br>              Defendant. | No. 13 Civ. 8955 (ER) <br><br> ECF Case |

# MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 60(b)

Jonathan Manes, *Supervising Attorney*
David A. Schulz, *Supervising Attorney*
John Ehrett, *Law Student Intern*
Yurij Melnyk, *Law Student Intern*
Alexandra Perloff-Giles, *Law Student Intern*
MEDIA FREEDOM AND INFORMATION
ACCESS CLINIC, YALE LAW SCHOOL
P.O. Box 208215
New Haven, CT 06520
Tel: (203) 432-9387
Fax: (203) 432-3034
jonathan.manes@yale.edu
john.ehrett@clinics.yale.edu
yurij.melnyk@clinics.yale.edu
alexandra.perloff-giles@clinics.yale.edu

*Counsel for the Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND....................................................................................................2

ARGUMENT ............................................................................................................................4

I.      THE GOVERNMENT CANNOT ESTABLISH ANY PLAUSIBLE HARM FROM
        DISCLOSURE OF ITS TPP POSITIONS NOW THAT THE NEGOTIATIONS ARE
        CONCLUDED AND THE TPP TEXT IS PUBLISHED....................................................4

II.     BECAUSE THE FINAL TEXT OF THE TPP HAS BEEN OFFICIALLY
        DISCLOSED, MANY OF USTR'S PRIOR WITHHOLDINGS ARE IMPROPER..........8

III.    RELIEF IS PARTICULARLY WARRANTED UNDER RULE 60(b)(6) IN LIGHT
        OF THE GOVERNMENT'S CHANGED POSITION, INCLUDING ITS OFFICIAL
        DISCLOSURE OF PREVIOUSLY WITHHELD MATERIALS....................................10

CONCLUSION........................................................................................................................13

## INTRODUCTION

Intellectual Property Watch (IP-Watch) brought this action in 2013 in order to obtain access to basic information about the intellectual property provisions of the Trans-Pacific Partnership (TPP), a major trade agreement involving the United States and 11 other Pacific Rim countries.  Among other things, IP-Watch seeks disclosure of the United States' specific positions and proposals during the course of negotiations, as reflected in the draft texts of the agreement and also, perhaps, in final "decision memoranda" prepared by defendant United States Trade Representative (USTR) and in communications between USTR and industry representatives.  Five months ago, while TPP negotiations were still ongoing, the Court upheld USTR's denial of access to this information.  The Court determined that the government had properly classified information about its TPP positions and proposals, resting its decision primarily on a finding that disclosure could plausibly harm the ongoing negotiations.

Since the court's decision, the TPP negotiations have ended, and the negotiating parties have reached an agreement.  USTR's primary rationale for withholding has therefore disappeared.

It is particularly important for the American public to know what positions its government took during negotiations now that the agreement is final and will be subject to a congressional vote.  Disclosure of U.S. negotiating positions could shed light on how USTR advanced and protected the concerns of industries, consumers, and other interest groups during the negotiation process.  It could also illuminate the extent to which USTR was successful in promoting American interests at the discussion table.

Moreover, the final text of the agreement has now been published by the government and is available for all to read.  Under settled circuit precedent, the government cannot lawfully withhold portions of the draft texts (and other materials) that substantially match the final text, as

1

released.  Access to drafts that mirror the substance of the final text would allow the public to understand how the agreement evolved over time.  Such disclosure would permit IP-Watch to understand (and report on) important aspects of the negotiations, including which issues were long-settled, which issues were most hotly disputed, and which required the greatest compromise—precisely the kind of insights that would prove useful during this period of congressional deliberation before the agreement is adopted.

Plaintiffs therefore respectfully ask the Court to modify its prior decision and order disclosure of the draft texts (and other materials) to the extent they reflect TPP positions advanced or adopted by the U.S. government, or at least to the extent that they match the substance of the final text of the TPP as published.  Such relief is appropriate under Rule 60(b) where, as here, changes in the government's position have eliminated the rationale for confidentiality that was previously endorsed by the Court.[1]

## FACTUAL BACKGROUND

On March 23, 2012, IP-Watch, a non-profit, independent news service that provides original reporting and analysis on international intellectual property policy, filed a Freedom of Information Act (FOIA) request seeking five categories of information about the TPP.  Op. and Order 5, ECF No. 69 ("Op.").  By the time the case reached summary judgment, only three categories of records remained in dispute: the draft text of the intellectual property provisions of the Trans-Pacific Partnership (TPP); decision memoranda reflecting USTR's final proposals for TPP text and negotiating strategy; and communications between USTR and members of Industry Trade Advisory Committees (ITACs).  *Id.* at 5-6.

---

[1] At the status conference that took place on December 18, 2015, undersigned counsel notified the Court that Plaintiffs intended to file the present Rule 60(b) motion.  The Court indicated that Plaintiff was permitted to file and verbally approved a filing date of February 15, 2016.  Plaintiffs have thus complied with the Court's individual practices regarding pre-motion conferences.  *See* Individual Practices of Judge Edgardo Ramos § 2.A.ii.

The government moved for summary judgment arguing, as relevant here, that the draft texts, decision memoranda and portions of the ITAC communications were exempt under FOIA Exemption 1, which allows withholding of "properly classified" information relating to national defense or foreign policy.  Op. 8-9, 12-13, 17.  IP-Watch cross-moved, seeking disclosure only of the United States's own positions and proposals for the TPP, as reflected in the withheld documents.  Op. 5.  IP-Watch argued that such information—already disclosed to foreign counterparties—was not properly classified because disclosure to the public would not harm foreign relations.  Op. 12-13.

On this issue, the Court ultimately sided with USTR, holding that USTR could withhold information regarding its negotiating positions and proposals, largely because "the fact that TPP negotiations [were] ongoing ma[de] USTR's claims of harm particularly plausible." Op. 14, 16.[2] In reaching this conclusion, the Court "generally agree[d] with Plaintiffs that USTR's declarations justifying withholding [were] not particularly detailed, and should have contained a more rigorous discussion of why disclosure of positions on the *particular topics* discussed . . . would harm negotiations." *Id.* at 15-16 (emphasis in original).  The Court nevertheless found "the government's showing . . . sufficient, if minimally so." *Id.* at 16.

---

[2] With respect to the ITAC communications, the Court found (1) that those portions redacted under Exemption 1 were properly withheld; (2) that those portions redacted under Exemption 5 were unlawfully withheld; and (3) that the government had not demonstrated that material withheld under Exemptions 3 and 4 were properly withheld and ordered the government to submit supplemental justification with respect to both.  Op. 35.  In subsequent proceedings, USTR dropped its reliance on Exemption 4 and the parties fully briefed the applicability of Exemption 3, arguing their respective positions at a status conference held on December 18, 2015.  ECF No. 81, 85.  That question remains pending before the Court.

This motion does not bear upon the pending questions regarding Exemption 3, but instead focuses on the separate issue of USTR's Exemption 1 withholdings, including redactions from the portions of the ITAC communications made on that basis.

3

Following the Court's decision, the government's position with respect to the TPP has changed a great deal.  The government concluded TPP negotiations on October 4, 2015, successfully reaching an agreement with its foreign trading partners.  *See* Second Declaration of Jonathan Manes ("Second Manes Decl.") ¶¶ 5-6, Ex. A.  On February 4, 2016, the parties to the TPP signed the agreement.  *Id.* ¶¶ 7-8, Ex. B.  Perhaps most importantly for present purposes, the final, full text of the TPP has now been prepared and officially disclosed by USTR on its website.  *Id.* ¶¶ 9-10.[3]

In order to take effect, the TPP must be ratified by Congress, a step that has not yet occurred.  An informed public debate on this topic is now more important than ever.

The changes in the government's position with respect to the TPP, including the official disclosure of the final text, have undermined the core of this Court's decision endorsing the government's withholding, and have undermined or eliminated USTR's ability to invoke Exemption 1.  Plaintiffs ask the Court to revise its prior determination and order disclosure in light of these changes.

## ARGUMENT

**I.      THE GOVERNMENT CANNOT ESTABLISH ANY PLAUSIBLE HARM FROM DISCLOSURE OF ITS TPP POSITIONS NOW THAT THE NEGOTIATIONS ARE CONCLUDED AND THE TPP TEXT IS PUBLISHED.**

As this Court previously recognized, it is the government's burden to justify why information is "properly classified" under Exemption 1, including showing that disclosure could reasonably be expected to cause "harm to the national defense or foreign relations."  Op. 11-12. It is then this Court's role to "to independently assess whether USTR's assertions of reasonably-

_____

[3] The full text of the TPP, including the intellectual property ("IP") chapter, is published on USTR's website, available here: *See* Office of the United States Trade Representative, *TPP Final Table of Contents*, https://ustr.gov/trade-agreements/free-trade-agreements/trans-pacific-partnership/tpp-full-text.  Because the text is extraordinarily lengthy—the IP chapter alone runs 74 pages—Plaintiffs have not attached it as an exhibit.

expected harm are 'plausible' and 'logical.'"  Op. 12.  As this Court has already recognized, "'[t]he agency asserting the exemption bears the burden of proof and all doubts as to the applicability of an exemption must be resolved in favor of disclosure.'"  Op. 9 (quoting *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009)).  While the standard for withholding in Exemption 1 cases is "relatively deferential," Op. 12, "blind deference is precisely what Congress rejected when it amended FOIA in 1974," *Halpern v. FBI*, 181 F.3d 279. 293 (2d Cir. 1999).

Applying these standards, the Court found that the government's showing of harm from disclosure was "sufficient" but only "minimally so," Op. 16, because the "TPP negotiations [were] ongoing" which "ma[de] USTR's claims of harm particularly plausible in this case," *id.* at 14.  For instance, the Court observed that U.S. negotiating partners may have good reasons for not wanting "the proposals they received from the U.S. to be made public *prior to consummation of the agreement*."  Op. 13-14 (emphasis added).  Similarly, the Court concluded that it was "logical and plausible that unilateral disclosure of Draft Chapters . . . would harm foreign relations, *especially prior to consummation of the final agreement*." Op. 16 (emphasis added).

Now that the TPP negotiations have concluded, this rationale for withholding—the strongest one, according to the Court—no longer applies.  The remaining, subsidiary rationales for classification that were previously offered by USTR and discussed by the Court are insufficient to provide a plausible basis for classification and are, in any case, fatally undermined by the changes in the government's position since the Court previously ruled.

For example, the Court previously wrote that "[p]otential harm to future trade negotiations is . . . plausible" because disclosure may "reduce the U.S.'s flexibility" in bargaining with other countries not involved in TPP negotiations.  Op. 15.  As an initial matter, it

is not clear from the Court's opinion that this speculative harm could—on its own—support the government's withholding.  As this Court noted, "USTR's declarations justifying withholding under Exemption 1 are not particularly detailed, and should have contained a more rigorous discussion of why disclosure of positions on the *particular topics* discussed in the two Decision Memoranda would harm negotiations."  Op. 15-16.

But even if concern for future negotiations with non-TPP countries could at one time have constituted a "plausible" account of harm to foreign relations, it no longer does, for a simple reason: now that the text of the TPP is public, the United States' flexibility in future negotiations has *already* been constrained.  Every other country in the world now knows what the United States will agree to in a similar trade negotiation.  There is therefore no logical or plausible reason why disclosing that the United States proposed or adopted particular provisions would "restrict flexibility" in future negotiations.  This is particularly true with respect to those provisions that are similar or identical to the final text of the agreement.[4]

---

[4] This Court previously relied upon *Center for International Environmental Law v. Office of the U.S. Trade Representative* ("*CIEL*") for the proposition that disclosure could "reduce the U.S.'s flexibility and complicate information exchanges" in future negotiations with other countries.  Op. 15; *CIEL*, 718 F.3d 899, 903 (D.C. Cir. 2013).  But in that case, the government was seeking to protect from disclosure a closely-held *interpretation* of certain treaty provisions—interpretations that it had not shared with foreign counterparties and which had certainly not been published for all the world to see.  *Id.*  It may be "plausible" that such confidential interpretations, if disclosed to any other countries, could reduce the United States' flexibility in interpreting similar treaty provisions in future.  But it is difficult or impossible— and certainly implausible—to suggest that the United States' flexibility will be limited by disclosing information about the actual *text* of an agreement when that text that is (1) already shared with foreign governments and (2) reflected to a presumably large extent in the final, public text.  Moreover, in *CIEL*, the document in question was a "white paper" discussing the meaning of a specific phrase—"in like circumstances"—that appeared in multiple trade agreements.  *Id.* at 901-902.  The government made specific arguments about why the interpretation of that particular provision could harm U.S. interests in the future.  *Id.* at 902.  USTR has made no such specific and detailed arguments here about how disclosing certain proposals for the TPP would harm future negotiations.  *See* Op. 15-16.

Similarly, the Court previously observed that the disclosure sought by IP-Watch might violate the confidentiality agreement signed by the parties to the TPP.  *See* Op. 16.  But, as the Court cautioned, "violation of a confidentiality agreement does not *per se* satisfy the government's burden under Exemption 1;" an independent, plausible showing of harm is required.  Op. 14.  In this case, because IP-Watch only seeks disclosure of the *United States's* positions and proposals, the potential harm to foreign relations has always been attenuated.  *See* Op. 13.  Now that negotiations are over and the agreement finalized, it is entirely unclear how disclosure of the United States's negotiating positions would violate the trust of other countries or otherwise harm foreign relations.

Thus, even if confidentiality agreements are essential while multilateral trade agreements are being negotiated, disclosure in the present circumstances would not affect the U.S.'s foreign policy interest in preserving its trading partners' confidences.  Put differently, it is *not* the case now—as the Court previously stated—that "disclosure in this case might establish a precedent that all draft text in all future trade negotiations involving the U.S. would be subject to FOIA disclosure."  Op. 16.  Nor is it the case that "foreign confidentiality agreements would be rendered futile" by a ruling for plaintiffs in this case.  Op. 16.  To the contrary, plaintiff seeks to establish only the proposition that in these particular circumstances—where a multilateral agreement has been concluded and the text published for all to see—disclosure of the United States's own positions and proposals during the course of negotiations would not plausibly harm foreign relations.  There is, in other words, a clear "limiting principle" to the disclosure sought here.  *Cf.* Op. 16.

Because of the changes in the government's position following this Court's decision, the justifications that the Court previously relied upon to uphold the government's Exemption 1

withholdings are no longer plausible or logical.  This Court should order the government to

disclose those portions of the withheld materials that describe the specific positions that the

United States proposed or adopted in negotiations.

## II.  BECAUSE THE FINAL TEXT OF THE TPP HAS BEEN OFFICIALLY DISCLOSED, MANY OF USTR'S PRIOR WITHHOLDINGS ARE IMPROPER.

Because USTR itself has released the full and final text of the TPP, certain portions of the

draft texts have been officially acknowledged, and as a result can no longer be properly

classified.  Under the law of this Circuit, information cannot be withheld under Exemption 1

once it has been officially released by the government.  "Voluntary disclosures of all or part of a

document may waive an otherwise valid FOIA exemption."  *N.Y. Times Co. v. U.S. Dep't of*

*Justice*, 756 F.3d 100, 114 (2d Cir. 2014).  The test for waiver of Exemption 1 requires the

information requested (1) to be "as specific as the information previously released," (2) to

"match" the information previously released, and (3) for the information to have been "made

public through an official and documented disclosure."  *Azmy v. U.S. Dep't of Defense*, 562 F.

Supp. 2d 590, 599, 605-06 (S.D.N.Y. 2008) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C.

Cir. 1990)); *see also N.Y. Times*, 756 F.3d at 120; *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir.

2009).

The court in *New York Times*, however, clarified that it "d[id] not understand the

'matching' aspect of the . . . test to require absolute identity," as such a requirement would

render the test toothless.  *N.Y. Times*, 756 F.3d at 120.  Moreover, the Court cautioned that the

test—including the "matching" requirement, which does not even appear in the test's "ultimate

source," *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir 1983)—was of

"questionable provenance" and therefore ought not be applied "rigid[ly]."  *Id.* at 120 n.19.

8

In this case, the final text of the TPP satisfies all three of the test's requirements to compel disclosure of the drafts—or at least those portions that closely track or match the final version. *First*, the information sought is "as specific as the information already released." *Azmy*, 562 F. Supp. 2d at 599. Unlike cases in which plaintiffs have sought to establish official disclosure of specific intelligence documents based on more general comments and acknowledgements of officials, *see, e.g.*, *Fitzgibbon*, 911 F.2d at 766; *Amnesty Int'l USA*, 728 F. Supp. 2d at 508-09; *ACLU v. U.S. Dep't of Defense*, 664 F. Supp. 2d 72, 77 (D.D.C 2009), Plaintiffs here request draft texts and negotiating positions presumably addressing the *exact same subjects* with *exactly the same specificity* as the final, public text of the agreement.

*Second*, the draft texts, or at least portions of them, "match" the final text as that requirement was interpreted in *New York Times*. In that case, the court held that legal analysis of drone strikes and targeted killings sufficiently "matched" public congressional statements regarding those programs and a publicly disclosed white paper to satisfy this requirement of the test. *N.Y. Times*, 756 F.3d at 120-21. Thus, in order to "match," it is not necessary for the still-withheld documents to be set forth in the exact same format as the officially-disclosed documents, or even for both documents to be of the same type. Here, the draft texts of the TPP (and any other materials disclosing U.S. proposals and positions) surely "match" the final, public version much more closely than the documents of different types and public statements deemed to match in *New York Times*. Indeed, any text from those documents that appears verbatim in the final text "matches" even under the most stringent meaning of that word. But under the more liberal approach required by *New York Times*, even portions of the withheld material that are not identical to the final text but which prefigure it, or which are similar in substance, constitute a sufficient "match" for purposes of official acknowledgment.

9

*Third*, the final text has clearly been made public through an official and documented disclosure.  The text of the TPP is freely available for inspection on the USTR's own website, Second Manes Decl. ¶¶ 9-10, and has thus been made available by "the agency responsible for protecting the information."  *Azmy*, 562 F. Supp 2d at 606 (quoting *Wilson v. McConnell*, 501 F. Supp. 2d 545, 559 (S.D.N.Y. 2007)); *see also Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999).

Because the test's three requirements have been met, USTR's assertions regarding reasonably expected harms cannot be deemed "logical" or "plausible."  The draft texts—or at least portions thereof—are not properly classified pursuant to Exemption 1 and E.O. 13526.  Indeed, to the extent that USTR's prior positions and proposals for the TPP "match" the final agreement, those positions are now improperly withheld wherever they appear—whether in the draft texts, decision memoranda or ITAC communications.

## III.    RELIEF IS PARTICULARLY WARRANTED UNDER RULE 60(b)(6) IN LIGHT OF THE GOVERNMENT'S CHANGED POSITION, INCLUDING ITS OFFICIAL DISCLOSURE OF PREVIOUSLY WITHHELD MATERIALS.

Reconsideration is appropriate because the government has changed its position and officially disclosed the text of the TPP after the Court rendered its decision.  Rule 60(b)(6) allows the court to reconsider a prior order for "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6).  The rule grants "broad authority to relieve a party from a final judgment 'upon such terms as are just.'" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (citing and quoting *Klapprott v. United States*, 335 U.S. 601, 614–615 (1949) (holding that Rule 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.")).[5]

---

[5] In order to obtain relief under Rule 60(b)(6) a motion must not be "premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."  *Liljeberg*, 486 U.S. at 863-

Both this Circuit and the D.C. Circuit have indicated that one such reason justifying relief arises when the government officially discloses information that had been withheld at the time the court rendered its original decision, and this newly disclosed information undermines the rationale for withholding.  For instance, in its 2014 decision in *New York Times*, the Second Circuit explicitly recognized that where "ongoing disclosures by the Government made in the midst of FOIA litigation" occur, it is appropriate for the court to take those disclosures into account. *N.Y. Times*, 756 F.3d at 111 n.8. In that case, the Government argue[d] that the Court could not "consider any official disclosures made after the District Court's opinion." *Id.*  The Court of Appeals disagreed, explaining, "[a]lthough we are not required to consider such evidence, the circumstances of this case support taking judicial notice of the statements here." *Id.  New York Times* thus recognizes an exemption to the "general rule [that] a FOIA decision is evaluated as of the time it was made and not at the time of a court's review."  *Id.*  Similarly, in *ACLU v. C.I.A.*, 710 F.3d 422 (D.C. Cir. 2013), the Court of Appeals for the D.C. Circuit held that it could consider official government disclosures that post-dated the district court's opinion and which undermined the government's litigation position—in that case, its refusal even to

---

64. It does not appear that Plaintiffs could obtain relief under any other provision of Rule 60(b). For instance, relief under Rule 60(b)(2) based on "newly discovered evidence" applies only to "facts that existed at the time of trial or other dispositive proceeding," not to changes in the government's position that occur *after* the court's decision.  *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (internal quotation omitted).  Relief also appears to be unavailable under Rule 60(b)(5) (relief available where "applying [order] prospectively is no longer equitable") because that provision can only be used to modify an "order or judgment [that] has prospective application" in the sense of an order that is "executory or involves the supervision of changing conduct or conditions."  *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2d Cir. 1994) (internal quotation omitted).
In addition, to the extent that relief under Rule 60(b)(6) requires "extraordinary circumstances," *Liljeberg*, 486 U.S. at 863, such circumstances exist where, as here, the government's own change of position and official public disclosures undermines its prior justification for withholding information.  *See infra* at 11-12 (discussing *N.Y. Times*, 756 F.3d at 111; *ACLU*, 710 F.3d at 427).

confirm or deny the existence of records.  *Id.* at 427.  The courts in those cases considered the government's changed position, and rejected the government's position on that basis.  This Court should do likewise.

The official disclosure of the TPP—as well as the other changes in the government's position since the Court's decision—warrant this Court's review of the continuing validity of USTR's arguments for withholding.  *Cf. Marino v. Drug Enforcement Administration*, 685 F.3d 1076, 1081-83 (D.C. Cir. 2012) (permitting reconsideration under Rule 60(b)(6) in order to permit a FOIA requester to argue that the government's withholdings were unjustified in light of publicly available information).  Such review would not only be consistent with the practice of the Second Circuit, but would also "foster judicial economy and the 'comprehensive disposition of litigation.'"  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (internal citations omitted).

It has been nearly four years since IP-Watch filed its initial FOIA requests and this litigation has been pending for more than two years.  If this Court refuses to review the effect of the changes in the government's position, it would in effect require IP-Watch to initiate duplicative litigation in order to resolve the question presently before the Court.  It could also frustrate the possibility of efficient and timely appellate review of the important legal issues at issue in this case.

Public access to the United States' positions over the course of the TPP negotiations is particularly important at this moment in the TPP's progress.  In the coming months, Congress will take up the TPP and will make a decision about whether the United States will be bound to its provisions.  Access to the information sought here will allow IP-Watch and others to understand how USTR advanced and protected American interests, tracing the fate of USTR's

positions and proposals through to the final text.  This kind of analysis would allow the public to better assess the deal's merits as well as the tradeoffs that are inherent in such a large and complex international negotiation.  Rule 60(b)(6) provides a clear basis for this Court to review its prior determination now.  Plaintiffs respectfully ask the Court to do so.

## CONCLUSION

In light of the changes in the government's position, Plaintiffs respectfully ask the Court to revise its prior decision and to order disclosure of the U.S. positions and proposals for the IP provisions of the TPP, as reflected in the draft texts, decision memoranda, and ITAC communications withheld by USTR.

Respectfully submitted,

MEDIA FREEDOM AND INFORMATION
ACCESS CLINIC, YALE LAW SCHOOL[6]

By:/s/Jonathan M. Manes

Jonathan M. Manes
David A. Schulz
John Ehrett, Law Student Intern
Yurij Melnyk, Law Student Intern
Alexandra Perloff-Giles, Law Student Intern
P.O. Box 208215
New Haven, CT 06520-8215
Tel: (203) 432-9387
Fax: (203) 432-3034
jonathan.manes@yale.edu
john.ehrett@clinics.yale.edu
yurij.melnyk@clinics.yale.edu
alexandra.perloff-giles@clinics.yale.edu

*Counsel for the Plaintiffs*

Dated: February 15, 2016
New Haven, CT

---

[6] This memorandum has been prepared by the Media Freedom and Information Access Clinic, a program of the Abrams Institute for Freedom of Expression at Yale Law School.  Nothing in this memorandum should be construed to represent the official views of the law school.